IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SHAUN A. STRICKLAND, | CV 02-1119-BR |
| Plaintiff, | VERDICT, FINDINGS OF FACT, AND |
| v. | CONCLUSIONS OF LAW |
| DAVID COOK, Director, Oregon Department of Corrections; STAN CZERNIAK, Superintendent, Oregon State Penitentiary; SEAN HARRIS, O.S.P. Sergeant; HARLOWE QUIJANO, O.S.P. Corporal; TERRY BROWN, O.S.P. Captain; ROBERT D. BURCH, O.S.P. Corporal; MARCUS T. MARTAIN, O.S.P. Corporal; MARK S. BUCHOLZ, O.S.P. Corporal; BRIAN E. STEPHEN, O.S.P. Lieutenant; ANY AND ALL OTHER UNKNOWN O.S.P. CORRECTIONAL OFFICERS, | |
| Defendants. | |

**FOSTER A. GLASS**
339 N.W. Century Drive, Suite 101
Bend, OR  97702
(541) 317-0703

        Attorney for Plaintiff

**HARDY MYERS**
Attorney General
**LEONARD W. WILLIAMSON**
**KATHRYN ANNE COTTRELL**
Assistant Attorneys General
Department of Justice
1162 Court Street N.E.
Salem, OR   97301
(503) 378-6313

        Attorneys for Defendants

**BROWN, Judge.**

Plaintiff brings this action against Defendants Sean Harris, Harlowe Quijano, Terry Brown, Robert Burch, Marcus Martain, Mark Bucholz, Brian Stephen, and other "unknown Oregon State Penitentiary Correctional Officers."[1]  Plaintiff alleges Defendants used excessive force against him in violation of his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause during two incidents that occurred when Plaintiff was incarcerated at the Oregon State Penitentiary (OSP).  Defendants, however, contend their use of force was an appropriate reaction to Plaintiff's provocative and unruly behavior.

This action was tried to the Court from March 29 to March 30, 2005.

In the Pretrial Order filed February 22, 2005, Plaintiff asserted claims against Defendants for violation of Plaintiff's

_____

[1]  On November 12, 2003, the Court dismissed Plaintiff's claims against Defendants David Cook and Stan Czerniak.

rights under the Eighth Amendment of the United States Constitution, the Oregon Constitution, and Or. Rev. Stat. § 421.105 and for common-law assault and battery. At the beginning of trial, however, Plaintiff withdrew his state constitutional, statutory, and common-law claims (Claims Two, Three, Four, Six, Seven, and Eight as set forth in the Pretrial Order). Plaintiff also withdrew his previously asserted Fourth Amendment claims.[2] The only claims remaining to be tried, therefore, were Plaintiff's Eighth Amendment claims (Claims One and Five) brought pursuant to 42 U.S.C. § 1983. Claim One is based on an incident that occurred on October 24, 2000, and Claim Five is based on an incident that occurred on February 15, 2001.

At the close of Plaintiff's case, the Court granted the oral motion for judgment as a matter of law asserted by Defendants Burch, Martain, and Bucholz and dismissed Plaintiff's claims against these Defendants. The Court also dismissed Plaintiff's claims against unnamed Defendants.

**<u>VERDICT</u>**

The Court has completed its consideration of the evidence presented at trial and has completed its deliberation. Based on its Findings of Fact and Conclusions of Law made pursuant to

---

[2] Plaintiff did not include any Fourth Amendment claims in the Pretrial Order.

Fed. R. Civ. P. 52(a) as set forth below, the Court concludes as follows:

Officers Terry Brown and Brian E. Stephen did not violate Plaintiff's constitutional rights on October 24, 2000.

Officer Harlowe Quijano did not violate Plaintiff's constitutional rights on February 15, 2001.

Officer Sean Harris violated Plaintiff's constitutional rights on February 15, 2001, and Officer Harris is not entitled to qualified immunity. As a result of Officer Harris's conduct, Plaintiff is entitled to recover $7,500 as compensation for the physical injuries he sustained, including the cut to his chin, bruises, soreness, and abrasions on his back. In addition, Plaintiff is entitled to recover $7,500 for emotional distress caused by Officer Harris's unconstitutional use of force.

The Court, therefore, enters its Verdict as follows: against Plaintiff and in favor of Defendants Brown and Stephen on Claim One; against Plaintiff and in favor of Defendant Quijano on Claim Five; and in favor of Plaintiff and against Defendant Harris on Claim Five in the amount of $15,000. As a consequence, Plaintiff is entitled to recover his reasonable and necessary costs and attorneys' fees in connection with Count Five.

## **FINDINGS OF FACT**

The Court finds the following facts by a preponderance of

evidence.

1.    At all material times, Plaintiff was an inmate at Oregon State Penitentiary (OSP), and Defendants Harris, Quijano, Brown, and Stephen were correctional officers at OSP.

2.    At the time of the incidents that give rise to Plaintiff's claims, Plaintiff was receiving treatment for emotional and mental anxieties.

**The October 24, 2000, Incident**.

3.    On October 24, 2000, Plaintiff was housed in the Disciplinary Segregation Unit (DSU) at OSP.

4.    Plaintiff was upset because he believed some of his medications were being discontinued due to budget cuts. Plaintiff was causing a commotion in DSU, and Officer Stephen responded.  Plaintiff told Officer Stephen that he wanted to see a mental health counselor.  Plaintiff submitted to restraints, and Officer Stephen escorted Plaintiff to a holding cell to await the arrival of the counselor.

5.    Plaintiff was placed in a holding cell with his hands cuffed behind his back, and the cell door was locked.

6.    The holding cell is a three-sided space constructed of chain-link attached to the walls across a corner space.

7.    After the counselor arrived, Officer Stephen stepped around the corner to give Plaintiff some privacy with the counselor.

8. Plaintiff moved his handcuffed hands from behind him so that they were in front of him. Plaintiff continued to be upset. Plaintiff was yelling, and he kicked the door of the holding cell. Officer Brown ordered Officer Martain to get the "OC" spray from a locked cabinet. Before any officer could reach the "OC" spray, Plaintiff kicked open the holding cell door.

9. OSP staff, including Officers Stephen, Brown, and Martain, responded to the situation. Plaintiff continued to yell. Officer Stephen ordered Plaintiff to get back into the holding cell, but Plaintiff did not do so. Plaintiff attempted to strike Officer Stephen. Officer Stephen attempted to restrain Plaintiff in a bear hug, but Plaintiff continued to struggle and push forward. Officer Brown struck Plaintiff in the forehead with the flat of his hand, but Plaintiff continued to resist. Officer Brown then struck Plaintiff with his fist and took Plaintiff to the floor. Plaintiff was then escorted to a cell.

**The February 15, 2001, Incident.**

10. On February 15, 2001, Plaintiff was housed in the B Unit of the Intensive Management Unit (IMU) at OSP. Officers Harris and Quijano came to IMU to conduct cell searches. Plaintiff's cell was the first one searched. Plaintiff was removed from his cell and placed in the shower to wait while the officers searched his cell. OSP staff routinely used the shower as a holding cell during searches.

11.  Plaintiff waited in the shower for approximately ten minutes.  He saw Officer Harris come out of Plaintiff's cell and throw some magazines in the trash.  Plaintiff asked Officer Harris why he threw the magazines in the trash, and Officer Harris said they were not approved.  Plaintiff believed the magazines were approved because he had brought them with him from Oregon State Correctional Institution (OSCI).

12.  Officers Harris and Quijano proceeded to move Plaintiff back to his cell.  Plaintiff was handcuffed with his hands behind his back, and a safety tether was attached.

13.  At some point between the shower and Plaintiff's cell, however, Officer Harris decided to move Plaintiff to A Unit. Officer Harris did not seek permission from the housing unit supervisor to move Plaintiff to A Unit even though OSP policy required corrections officers to obtain permission from the IMU supervisor before moving an inmate.

14.  Officers Harris and Quijano escorted Plaintiff to the elevator.  Plaintiff was cooperative and calm during the walk to the elevator.  Plaintiff entered the elevator and faced the back as instructed.

15.  According to Officer Harris, Plaintiff pulled away from the tether and moved toward the corner of the elevator.  IN response, Officer Harris pulled up on the tether and performed a "leg sweep" to take Plaintiff to the ground.  Officer Quijano,

however, did not observe Plaintiff engaging in any provocative behavior, and Officer Quijano was surprised when Officer Harris took Plaintiff to the floor.

16.  Plaintiff was injured as a result of Officer Harris's use of force.  Plaintiff sustained a cut on his chin, abrasions on his back, and an intensely red mark behind his left ear.

17.  Officer Harris's use of force caused Plaintiff to be emotionally upset and to fear for his future safety at OSP.

18.  Officer Harris submitted a misconduct report and charged Plaintiff with Disobedience of an Order, Disturbance, Extortion, Assault, and Disrespect.

19.  On February 20, 2001, Hearings Officer Barbara Atterbury conducted a hearing on the misconduct charges against Plaintiff.  After hearing the testimony of Plaintiff, Hearings Officer Atterbury sought additional investigation of the incident.  On May 15, 2001, Hearings Officer Atterbury dismissed all charges against Plaintiff arising from the February 15, 2001, incident.

## CONCLUSIONS OF LAW

It is well-established that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  To determine whether Defendants' use of force

constitutes wantonness, the Court must consider "the objective
need for force, the relationship between any such need and the
amount of force actually used, the threat reasonably perceived by
the correctional officer, whether the officer took efforts to
temper the severity of his response, and the extent of the
inmate's injury." *Marquez v. Gutierrez*, 322 F.3d 689, 692 (9th
Cir. 2003).

**The October 24, 2000, Incident.**

Plaintiff asserts Officers Brown and Stephen used excessive
and unwarranted force during the incident on October 24, 2000, in
violation of Plaintiff's rights under the Eighth Amendment.
Defendants, however, argue the force used was reasonable under
the circumstances. In addition, Defendants contend they are
entitled to qualified immunity from Plaintiff's claims.

Plaintiff admits he was angry and upset while in the holding
cell, he moved his hands from behind to in front of him, and he
kicked the holding cell door. The Court concludes Plaintiff's
actions were provocative and were sufficient to warrant a
forceful response by Officers Brown and Stephen.

The Court also concludes Officers Brown and Stephen did not
act maliciously toward Plaintiff but engaged in an appropriate
reactive use of force to gain control of Plaintiff after the cell
door was opened.

Accordingly, the Court concludes Defendants' use of force

was not constitutionally excessive.

**<u>The February 15, 2001, Incident</u>.**

Plaintiff asserts Officers Harris and Quijano used excessive force against him during the incident on February 15, 2001, in violation of Plaintiff's rights under the Eighth Amendment. Defendants, however, argue the force used was reasonable under the circumstances. In addition, Defendants contend they are entitled to qualified immunity from Plaintiff's claims.

As noted, Plaintiff was calm and cooperative when Officers Harris and Quijano escorted him to the elevator. Plaintiff also was handcuffed and tethered and he was confined to the small space of the elevator when the incident occurred. Plaintiff was not resisting nor being unruly. Officer Harris admitted he took Plaintiff to the ground in response to Plaintiff merely moving toward the back corner of the elevator. The Court finds, however, Officer Harris could not have reasonably perceived any threat under these circumstances due to Plaintiff's movement toward the back corner of the elevator. The Court concludes, therefore, there was no objective need for Officer Harris to use force to take Plaintiff to the ground, and Officer Harris's use of force against Plaintiff in the elevator was unnecessary and unprovoked. Accordingly, the Court concludes Officer Harris's use of unnecessary and unprovoked force violated Plaintiff's rights under the Eighth Amendment.

Officer Harris, however, argues he is, nonetheless, entitled to qualified immunity from Plaintiff's § 1983 claim. Public officials are shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). "If a public official could reasonably have believed that his actions were legal in light of clearly established law and the information he possessed at the time, then his conduct falls within the protective sanctuary of qualified immunity." *Orin v. Barclay*, 272 F.3d 1207, 1214 (9th Cir. 2001)(citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)(*per curiam*)). Based on the uncontested evidence at trial, however, the Court concludes no corrections officer reasonably would have believed it was lawful to perform a leg sweep on a tethered, handcuffed inmate in an enclosed space such as an elevator merely because the inmate stepped toward the back corner of the elevator. Accordingly, the Court concludes Officer Harris violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, and Officer Harris is not entitled to qualified immunity.

In addition, the Court concludes Plaintiff was physically and emotionally injured because of Officer Harris's unwarranted and unconstitutional use of force in the elevator. Plaintiff testified Officer Harris punched him on the head before

performing the leg sweep. Officer Harris denied punching Plaintiff, but he admitted applying pressure to Plaintiff's head with his thumb. Linda Fleshman, R.N., testified she observed an intense red mark on Plaintiff's head behind his left ear. Nurse Fleshman did not believe the mark was consistent with thumb pressure because it was larger than a thumbprint. The Court need not resolve this particular conflict in the evidence, however, because in any event Plaintiff established he was injured as a result of Officer Harris's use of force.

The Court concludes Plaintiff is entitled to recover $7,500 as compensation for the physical injuries he sustained as a result of Officer Harris's actions, including the cut to his chin, bruises, soreness, and abrasions on his back. In addition, the Court finds Plaintiff is entitled to recover $7,500 as compensation for the emotional distress caused by Officer Harris's unconstitutional use of force.

The Court also concludes Officer Quijano did not participate in the unreasonable use of force against Plaintiff on February 15, 2001. Officer Quijano credibly testified he did not see Plaintiff engage in any provocative behavior in the elevator, and he was surprised when Officer Harris performed the leg sweep on Plaintiff, and he did not participate in the maneuvers that took Plaintiff to the ground.

## CONCLUSION

For these reasons, the Court enters its Verdict as follows: against Plaintiff and in favor of Defendants Brown and Stephen on Claim One; against Plaintiff and in favor of Defendant Quijano on Claim Five; and in favor of Plaintiff and against Defendant Harris on Claim Five in the amount of $15,000, plus reasonable attorneys' fees and costs to be determined as set forth below.

The Court directs Plaintiff's counsel to submit a judgment consistent with this Verdict no later than July 1, 2005. After the judgment is entered, Plaintiff's counsel may submit a petition for attorneys' fees and costs associated with that aspect of Claim Five on which Plaintiff prevailed. In the meantime, the Court directs counsel to confer to determine whether the attorney fee issue may be resolved by stipulation.

IT IS SO ORDERED.

DATED this 16th day of June, 2005.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge